## GALLOWAY v. THE STATE.

PERJURY.—INDICTMENT.—To an indictment for perjury, alleged to have been committed upon the trial of an indictment for robbery, it was objected that it did not appear that the trial in which the perjury was alleged to have been committed was had in or before the court. It was alleged that the indictment, upon the trial of which the alleged perjury was committed, was found on a day named, by the grand jury of the county, and returned into the court, and that afterwards such proceedings were had that the accused in that case was brought into said court and pleaded thereto not guilty, upon which issue such proceedings were had that afterwards, upon a day named, at the said court, so held as aforesaid, a trial was had, &c.

*Held*, that the objection was not well taken.

SAME.—Where, in an indictment for perjury, the materiality of the alleged false testimony plainly appears from the other facts alleged, no direct averment of its materiality is necessary.

SAME.—Where the alleged false testimony consisted of evidence tending to prove an *alibi* for one on trial for a felony, it was held that the material-

Galloway v. The State.

ity of the testimony sufficiently appeared without a direct averment, though the testimony given did not necessarily preclude the possibility of the presence of the accused at the place where the crime was committed.

CHANGE OF VENUE.—RULES OF COURT.—A rule of court requiring applications for a change of venue to be made at least one day prior to the day on which the cause is set for trial, is valid. Such a rule would not extend to a case where the affidavit alleged prejudice on the part of the judge, and that the fact was not known in time to comply with the rule.

PERJURY.—EVIDENCE.—On the trial of an indictment against A for perjury, where the perjury was alleged of the evidence given by the accused on the trial of an indictment against B for robbery, in swearing to facts tending to show that B was not at the place where the crime was committed, evidence of the conduct of B, at and prior to the time of his arrest, was held not to be admissible.

SAME.—Positive proof of the guilt of B would be admissible, in such case, as a fact or circumstance tending to show that he was not at the place sworn to by A, and that A's statement upon that subject was false, but proof of the guilt of B is not necessary to establish the charge of perjury against A.

SAME.—AMOUNT OF EVIDENCE.—In a prosecution for perjury, the testimony of a single witness to the falsity of the matter sworn to by the defendant, is not sufficient to justify a conviction. There must be such corroborative evidence upon the material point as to clearly satisfy the mind of the falsity of the sworn statements of the accused.

APPEAL from the *Marion* Criminal Circuit Court.

ELLIOTT, J.—*Galloway* was indicted, tried and convicted for perjury in testifying as a witness. A motion for a new trial was interposed, but it was overruled, and judgment rendered on the verdict. Before pleading, a motion was made by *Galloway* to quash the indictment, which the court overruled. This ruling presents the first question here.

The first objection urged to the indictment is that it does not show that the trial, in which the perjury is alleged to have been committed, was had in or before the court. It is alleged in the indictment that "at the *July* term of the *Marion* Criminal Circuit Court, in the year 1867, on the 27th day of *November*, 1867, at the city of *Indianapolis*, in the county of *Marion*, and state aforesaid, before the Hon. *George H. Chapman*, judge of the sixteenth judicial circuit of the State of *Indiana*, and *ex officio* judge of said *Marion*

Criminal Circuit Court, a certain indictment was returned and presented, in due course of law, by the grand jury for said county and court, against one *George Johnson*, for the crime of robbery, and afterwards such proceedings were had that the said *George Johnson* was duly and legally brought into said court, and being duly and legally arraigned upon said indictment, pleaded to the same that he was not guilty thereof, upon which issue such proceedings were had that afterwards, to-wit., on the 2d day of *December*, A. D., 1867, at the said *Marion* Criminal Circuit Court, so held as aforesaid, a trial was had and held by a certain jury of the county, in due manner returned, empanneled and sworn for that purpose, between the State of *Indiana* and the said *George Johnson*, upon the said indictment." It is further alleged that *Galloway* "appeared as a witness for and on behalf of said *George Johnson*, upon the said trial, and was then and there duly sworn, and took his corporal oath before said court," &c.

We think these allegations clearly show that *George Johnson* was tried on an indictment for robbery by a jury, in and before the *Marion* Criminal Circuit Court, and that *Galloway* appeared in said court and was sworn as a witness on that trial, and hence that the objection to the indictment in that respect is not well taken.

It is also insisted that the indictment is defective, in failing to show that the matter sworn to was material to the issue, upon the trial of which *Galloway* was sworn and testified as a witness. The indictment does not contain any direct averment of the materiality of the matter sworn to by *Galloway*, upon which the assignments of perjury are predicated; nor is such an averment necessary, as is conceded by the appellant's counsel, if its materiality plainly appears from the other facts alleged in the indictment. Touching this question, the averments in the indictment are, that on the trial of *Johnson*, evidence was given on behalf of the State, "that the felony and robbery, in the said indictment specified and charged, was commit-

ted by the said *George Johnson*, on *Thursday*, the 21st day of *November*, 1867, between the hours of five o'clock and six o'clock, to-wit, about twenty-five minutes before six o'clock, in the afternoon of said day, on the *Mars' Hill* gravel road, about three miles and a half from the city of *Indianapolis*, in the county and state aforesaid."

It is then alleged that *Galloway* was introduced as a witness on said trial in behalf of the said *Johnson*, the defendant therein, and being duly sworn as such witness, &c., upon his oath aforesaid, feloniously, willfully, corruptly and falsely "did depose and swear, among other things, in substance and to the effect following, that is to say: that he, the said *Frank Galloway*, met the said *George Johnson* at the *Palmer House* corner, in *Indianapolis*, about one o'clock in the afternoon of *Thursday*, the 21st day of *November*, 1867; that he, the said *Frank Galloway*, went from the said *Palmer House* corner to the saloon of *James Conklin*, on the corner of *Illinois* street and *Indiana* avenue, in said city, with said *George Johnson*; that they, the said *Galloway* and *Johnson*, remained constantly in said saloon from between two and three o'clock in the afternoon of said day, until a little after five o'clock in the afternoon of said day; that then he, the said *Galloway*, and the said *Johnson*, left said saloon together; that it was then dark; that shortly after leaving said saloon they separated; that he, said *Galloway*, went to his supper, and afterwards returned to said saloon about the hour of seven o'clock, P. M. of said day; that when he returned to said saloon, as aforesaid, he found the said *Johnson* there; that from the time they, the said *Galloway* and *Johnson*, first met on the *Palmer House* corner, on the said 21st of *November*, 1867, up to the time when they left the saloon together, a little after five o'clock in the afternoon of said day, they had not separated; that during the time they were in the saloon, in the afternoon of said day, before he, said *Galloway*, went to his supper, they, the said *Galloway* and *Johnson*, were playing cards and drinking beer in said saloon; that he knew it was on *Thursday*, the 21st day

of *November*, 1867, that he met said *Johnson* at the *Palmer House* corner, as aforesaid, and went with him therefrom to said saloon of said *Conklin*, as aforesaid, and remained there, with said *Johnson*, until a little after five o'clock in the afternoon of said day, for the reason that he heard of the arrest of said *Johnson* on the following day, on the charge of having committed the robbery charged and specified in said indictment." ·

The object of the evidence thus given by *Galloway* evidently was to establish an *alibi* in favor of *Johnson*, by showing that at, or very near, the time the robbery was committed, *Johnson* was at *Conklin's* saloon, in *Indianapolis*, at least three and a half miles distant from the place where the robbery was committed. The evidence, on the part of the prosecution, fixed the time of the robbery between five and six o'clock on the afternoon of the 21st of *November*, 1867, and indicates still more definitely that it was at about twenty minutes before six o'clock of that afternoon. The place of the robbery was on the *Mars' Hill* gravel road, and about three and a half miles from *Indianapolis*. *Galloway* swore that he and *Johnson* were constantly together at *Conklin's* saloon, in the city of *Indianapolis*, from between two and three o'clock until a little after five o'clock of the afternoon of the same day, at which time they left the saloon together, and shortly thereafter separated. If this statement were true, it would only allow about thirty minutes for *Johnson* to travel on foot three and a half miles, to be present at the commission of the offense. This he might possibly have done, and hence the statements of *Galloway*, as alleged in the indictment, even if true, would not conclusively establish an *alibi*; but if *Johnson* did in fact leave *Conklin's* saloon after the hour of five o'clock of that afternoon, as *Galloway* is alleged to have testified, it is not probable that he would have traveled on foot to the place where the robbery was committed in thirty minutes, and hence such evidence would tend to prove an *alibi*, and was therefore material to the issue. We assume that if *Johnson*

left *Conklin's* saloon after the hour of five o'clock, and yet was present at the commission of the robbery, he must have gone there on foot, as there is nothing in the alleged evidence of *Galloway* indicating that *Johnson* had a horse, or any other means of conveyance, when he left the saloon. True, there is nothing in the averments to exclude the idea that he might have procured a conveyance after he separated from *Galloway*, but the time which would necessarily be consumed in doing so would be such as to render it improbable that he could have been present at the robbery, if, in truth, he left the saloon after the hour of five o'clock of that afternoon. It cannot therefore be said that the facts which, it is alleged in the indictment, were sworn to by *Galloway*, would not, if true, tend to prove that *Johnson* was not present at the commission of the robbery, and their tendency to establish an *alibi* is all that is necessary to render them material.

The motion to quash the indictment was overruled on the 6th of *December*, 1867. On the 11th of the same month, when the case was called for trial, *Galloway* moved the court for a change of venue, on the ground of the prejudice of the judge of the court against him. The motion was based on an affidavit, stating that he believed he could not have a fair and impartial trial before the judge of said court, owing to the prejudice of said judge against him. The motion was overruled, for the reason that it was not made in time, under a rule of the court, which reads as follows: "Applications for a change of venue for any cause must be made at least one day prior to the day on which the cause is set down, by order of the court, for trial, unless the day of trial shall be fixed within three days after the return of the indictment, or the arrest of the defendant." The power of the court to adopt such rules of practice, in applications for changes of venue, was carefully examined in *Redman* v. *The State*, 28 Ind. 205, where a similar rule was held valid. We adhere to that ruling. We do not think the rule under consideration in this case should be

construed to apply to a case where it is shown by the affidavit that the applicant was not aware of the alleged prejudice of the judge until the day on which the case is set down for trial.

On trial of the cause, the court, over the objection of *Galloway*, permitted the State to prove the conduct and appearance of *Johnson*, not being a part of the *res gestæ*, just previous to and at the time of his arrest for the robbery, indicating his guilt. This was error. The *gravamen* of the charge in the indictment against *Galloway* is that he committed perjury in swearing that he and *Johnson* were constantly together at *Conklin's* saloon in *Indianapolis*, from between two and three o'clock until a little after five o'clock on the afternoon of the day on which the robbery was committed. It was legitimate for the State to prove that *Johnson* was present at the time and place of the commission of that offense, as such proof tended to establish the fact that he was not at *Conklin's* saloon in *Indianapolis* at a little after five o'clock of the same afternoon, as sworn to by *Galloway*, but the guilt of *Johnson* of the robbery was in no wise necessary in establishing the guilt of *Galloway* of the alleged perjury. *Johnson* might have been innocent of the robbery, or might have been a hundred miles distant from the place when and where it was perpetrated, and still, if *Galloway* testified that he was at *Conklin's* saloon, as alleged in the indictment, when in fact he was not there, he would be guilty of perjury. Positive proof that *Johnson* was guilty would be a fact or circumstance tending to show that he was not at *Conklin's* saloon at the time sworn to by *Galloway*, and was therefore admissible as evidence. But as a general rule, a party cannot be concluded, or even affected, by the acts, conduct or declarations of strangers. The acts and conduct of one who is a stranger to the prosecution are but in the nature of declarations or admissions, though frequently not so strong, and such declarations or admissions cannot be given in evidence to the prejudice of one who is not in any wise connected therewith. Here there is

no connection between the conduct and appearance of *Johnson* after the robbery was committed, and the facts necessary to establish the guilt of *Galloway*, and hence they should not have been given in evidence, to *Galloway's* prejudice. 1 Starkie on Ev. pp. 81, 82, 83. See, also, the notes to *Bauerman* v. *Radenius*, 2 Smith's L. C., p. 228.

The evidence in the case is before us, and, while we think it is sufficient to justify the conviction, it is not so conclusive in its character as to warrant the conclusion that the improper evidence admitted by the court had no influence on the minds of the jurors in making up their verdict.

The court gave to the jury, among others, the following instructions, viz: " The evidence of one witness as to the falsity of the evidence upon which perjury is assigned is not sufficient to warrant a conviction. If there is but one witness testifying directly to the falsity of the evidence of one charged with perjury, there must be evidence of circumstances corroborating such falsifying testimony. There is no rule by which the exact weight of the corroborating circumstances requisite to warrant a conviction can be determined; and it must be for the jury to determine whether such corroborating circumstances are sufficient to justify a verdict of guilty. It is frequently stated that such corroborating circumstances must be equivalent to the positive or direct testimony of a witness. *But such is not the rule of law.* If it were the rule, *it would be a rule without sense*, furnishing no guidance to the jury; for the weight which attaches to the direct testimony of a witness can scarcely be said to be exactly equal in any two individual cases; and consequently there could be no rule for arriving at the weight of the direct testimony of one witness."

This instruction was excepted to, and it is now insisted that it does not contain a correct enunciation of the law. The objection is to that part of the instruction commencing with the words, in italics, "but such is not the rule of law." It is not claimed that it was necessary to a conviction that

Galloway *v.* The State.

two witnesses should testify directly to the falsity of the matter sworn to by *Galloway*, but that the evidence of a single witness should be sustained by such strong corroborating circumstances as to be equal to the direct evidence of a second witness. To warrant a conviction of perjury, the evidence must be such as to satisfy the jury, to the exclusion of a rational doubt, of the falsity of the matter sworn to by the accused; but this cannot be done by the testimony of a single witness, as it would be but oath against oath, and the law forbids a conviction under such circumstances. Nor is evidence confirmatory of that one witness, in some slight particular only, sufficient to warrant a conviction; but it must be such as to corroborate the evidence of the witness in its material and essential point, and when such circumstantial evidence, in connection with the direct evidence of one witness, clearly satisfies the minds of the jury of the falsity of the matter sworn to by the accused, upon which perjury is assigned, it warrants a conviction.

This question is discussed at length in 2 Starkie on Evidence, commencing on p. 649, where it is said that " if any material circumstance be proved by other witnesses in confirmation of the witness who gives the direct testimony of the perjury, it may turn the scale, and warrant a conviction." We think the instruction given by the court was substantially correct.

For the error hereinbefore pointed out, the judgment is reversed and the case remanded for a new trial.

The clerk will issue the proper order for remanding the prisoner, &c.

*J. W. Gordon* and *S. A. Colley,* for appellant.

*D. E. Williamson,* Attorney General, for the State.