## HANN v. STATE OF INDIANA.

[No. 22,914.   Filed June 8, 1916.]

1. PERJURY.—*Evidence.*—*Number of Witnesses or Corroboration.*— To sustain a conviction for perjury there must be at least the direct and positive testimony of two witnesses or one witness and corroborating facts and circumstances, the direct evidence contemplated not being limited to a denial in *ipsissimis verbis* of the testimony given by the defendant, but includes any positive testimony of a contrary state of facts to that sworn to by him, or which is absolutely incompatible with his evidence, or physically inconsistent with the facts so testified to, and must be of such a character as to exclude every other reasonable hypothesis except that of defendant's guilt.   p. 60.

2. PERJURY.—*Evidence.*—*Sufficiency.*—Evidence reviewed and held insufficient to sustain a conviction for perjury, where the state failed to prove, to the exclusion of every other reasonable hypothesis except that of the defendant's guilt, the falsity of the matter sworn to by the defendant either by the direct and positive testimony of two witnesses or by one witness supported by corroborating facts and circumstances.   p. 61.

From Miami Circuit Court; *Joseph N. Tillett,* Special Judge.

Prosecution by the State of Indiana against Frank Hann.   From a judgment of conviction, the defendant appeals.   *Reversed.*

*Albert Ward* and *Antrim & McClintic,* for appellant.

*Evan B. Stotsenburg,* Attorney-General, *Omer S. Jackson* and *Wilbur T. Gruber,* for the state.

LAIRY, J.—This is a criminal action predicated upon an indictment returned by the grand jury of Miami county, Indiana, against appellant charging him with the commission of the crime of perjury, it being alleged in the indictment that appellant swore falsely as a witness while testifying in a cause in the Miami Circuit Court, entitled *State of Indiana* v. *Frank Revis*

About February 1, 1911, Frank Revis was found

in possession of about 4,500 pounds of clover seed, and shortly thereafter was arrested upon the charge of stealing it from the barn of Josiah Hann, who was the father of appellant in this case. Revis entered a plea of not guilty, and was tried upon the charge of stealing this seed from the barn of Josiah Hann, and convicted of that crime in April, 1911. At the trial it became necessary to identify the clover seed in question and to introduce evidence tending to establish the ownership of the property. As a part of the evidence so introduced, appellant, Frank Hann, testified that, while the clover seed was in his father's barn in the spring of 1909, he had written the name of his father, Josiah Hann, on three different slips of paper, and placed one of such papers in three separate sacks of the seed. In August, 1909, the barn of Josiah Hann was burned from an unknown cause, and it was discovered that some of his clover seed there stored had been taken away before the fire. In February, 1911, a quantity of stolen clover seed was found in Buffalo, New York, where it had been shipped from Peru, and appellant, accompanied by Mr. John W. Volpert, went to Buffalo to examine it. Some of the twenty-nine sacks of seed there found were opened and casually examined, and the shipment was returned to Peru, where some of it was emptied out upon a floor and sifted. At this time two slips of paper bearing the name of Josiah Hann were found in the seed and identified by appellant as being the slips placed by him in the clover seed in his father's barn in the spring of 1909. After Revis was convicted of stealing the clover seed in question from the barn of Josiah Hann, it was learned that a quantity of clover seed had been stolen by Revis and others from a freight car of the Wabash Railroad Company in Peru, and the indictment in this case

was returned.    A motion to quash this indictment was overruled and the issues formed by a plea of not guilty were tried before a jury, which returned a verdict of guilty.    The court overruled appellant's motion for a new trial and pronounced judgment on the verdict.

The error assigned and relied on is the alleged error of the trial court in overruling appellant's motion for a new trial.    Under this assignment appellant earnestly urges that the verdict is not supported by the evidence and is contrary to law, and that there was error in the giving of certain instructions and in the refusal of the court to give instruction No. 33 tendered by appellant.

The indictment charges that the statements made by appellant at the Revis trial in respect to the placing of the slips of paper in the sacks of clover seed at his father's barn in 1909 were false; that he did not place them there at that time and place, but "that said Frank Hann did place the said several pieces of paper, bearing the name of Josiah Hann, in said separate sacks of clover seed at some other time and place."

In order to prove the falsity of the statements made by appellant, the State attempted to show that appellant placed the slips of paper in the sacks of seed in February, 1911, when the seed was examined at Buffalo, or at some time and place other than that testified to by appellant, and also that the seed so found to contain the slips in question had been stolen from the railroad company in Peru.    Appellant claims that the evidence is wanting in both particulars.    As tending to show that appellant placed the slips of paper in the clover seed at Buffalo, the State introduced two witnesses who were with appellant at the time the seed was there examined.    These witnesses testified, however, that one of them was with him during all of the time

any sacks were opened, and that they did not see him place any paper in the sacks. One of these witnesses testified that to the best of his belief and knowledge appellant did not do so, and also that the sacks which were later opened at Peru and found to contain the slips of paper were not the sacks opened at Buffalo. The State was unable to show that appellant had access to the sacks of clover seed in which the slips were found at any other time after the alleged larceny. In showing that the seed found in Buffalo and later brought to Peru had been stolen from a freight car in Peru and was part of a shipment of clover seed from Griggsville, Illinois, to Toledo, Ohio, it was the purpose of the State to make out a set of circumstances entirely inconsistent and incompatible with the testimony in question, and to show it to have been impossible for appellant to have placed the slips in this seed in his father's barn in 1909. Before the evidence could have this effect it was necessary that it be shown that the *particular* clover seed found to contain the slips of paper was part of the shipment from Griggsville, Illinois, or that *all* of the clover seed returned to Peru from Buffalo, and found to contain the slips, was part of the Griggsville shipment.

Revis testified on this trial that he did not steal any seed from Josiah Hann, but that he did, with others, steal twenty-seven bags of clover seed from the freight car. He did not testify, however, that some of his confederates did not steal clover seed from Josiah Hann's barn, or that the shipment to Buffalo made by him and his accomplices was composed solely of the seed stolen from the shipment from Griggsville. The only other evidence concerning the identity of the particular seed containing the slips in question was not favorable to the state. It was to the effect that sixteen bags

remaining in the Griggsville shipment after the theft at Peru, which remaining seed finally reached Toledo, was new seed and contained no plantain; that the seed stored in Josiah Hann's barn was old seed and contained plantain, and that part of the seed returned to Peru from Buffalo, and some loose seed found in Revis's house where it had been stored, was old seed and contained plantain.

The undisputed evidence shows that the shipment from Griggsville contained forty-three bags, or 6,900 pounds, of clover seed, and that Revis and his confederates stole from this shipment twenty-seven bags, or 4,385 pounds. The evidence most favorable to the State is to the effect that 486 pounds of this amount were thrown into the river, leaving 3,899 pounds. The shipment made to Buffalo by these men, and finally found to contain the slips of paper, had been resacked, and amounted to 4,000 pounds. Under this state of the evidence, it is apparent that at least 101 pounds must have been derived from some source other than the amount stolen from the freight car. This being true, the circumstances shown by the evidence most favorable to the State are not irreconcilable with the testimony in question, for the reason that, even under the theory of the State that the clover seed stolen from the freight car and not thrown in the river was later shipped to Buffalo, the excess of seed shipped at that time may have been that in which appellant testified he placed the slips, in the barn of Josiah Hann in the spring of 1909.

To warrant a conviction of perjury, the evidence must be such as to satisfy the jury to the exclusion of a rational doubt of the falsity of the matter sworn to by the accused, but this evidence must be no less than the direct and positive testimony of two witnesses or one witness and corroborating facts and circumstances.

The direct evidence contemplated is not limited to a denial in *ipsissimis verbis* of the testimony given by the defendant, but includes any positive testimony of a contrary state of facts to that sworn to by him at the former trial, or which is absolutely incompatible with his evidence, or physically inconsistent with the facts so testified to. This evidence must be of such a character as to exclude every other reasonable hypothesis except that of the defendant's guilt. *Ex parte Metcalf* (1913), 8 Okla. Crim. 605, 129 Pac. 675, 44 L. R. A. (N. S.) 513; *People* v. *Chadwick* (1916), 4 Cal. App. 63, 87 Pac. 384, 389; *Beach* v. *State* (1893), 32 Tex. Cr. R. 240, 22 S. W. 976. If the evidence is composed of testimony as to certain circumstances which, although they be accepted as true, are not absolutely irreconcilable with the testimony of the defendant, any reasonable possibility which remains unnegatived, and which reconciles the circumstances shown with the statement in question, should be resolved in favor of the defendant and his innocence. The record does not disclose that there was evidence received at the trial rising to the dignity of that required by the rules above recited. The verdict of guilty is therefore not sustained by the evidence and is contrary to law.

Space need not be devoted to the several alleged errors concerning the instructions. The objectionable features pointed out to certain instructions given are not serious, except in one or two instances, and attention having been called to the defects in the several instructions, it is not likely that they will occur upon another trial.

Judgment reversed, with directions to the trial court to grant appellant's motion for a new trial.

NOTE.—Reported in 113 N. E. 304. Evidence necessary to support a conviction for perjury, 6 Ann. Cas. 810; 30 Cyc 1448. Requisites of indictment for perjury, 124 Am. St. 654.