PENDLETON v. STATE OF INDIANA.

[No. 29,676. Filed March 11, 1959. Rehearing denied April 27, 1959.]

*Paul E. Blackwell* and *Rochford, Blackwell & Rochford,* of counsel, of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General and *Owen S. Boling,* Assistant Attorney General, for appellee.

BOBBITT, J.—Appellant was charged by indictment with the crime of perjury under Acts 1927, ch. 203, §8, p. 580, being §10-3802, Burns' 1956 Replacement, tried by the court without the intervention of a jury, found guilty as charged, and sentenced accordingly.

Two questions are presented for our consideration: (1) Is the evidence sufficient to sustain the decision of the trial court? and (2) Did the court err in overruling appellant's motion for discharge?

Appellant asserts that the evidence is not sufficient to establish the fact of false swearing.

Section 10-3802, *supra,* provides, in pertinent part, as follows:

"Whoever wilfully, corruptly and falsely, before any officer authorized to administer oaths, under oath or affirmation, voluntarily makes any false certificate, affidavit or statement of any nature, for any purpose, shall be deemed guilty of perjury, . . ."

The rule in Indiana as to the evidence necessary to establish the crime of perjury in connection with a voluntary affidavit is ably stated in *Gardner* v. *State* (1951), 229 Ind. 368, at page 376, 97 N. E. 2d 921, as follows:

"In a prosecution for perjury in a voluntary affidavit it has long been the law in Indiana that the evidence must not only show the defendant swore falsely in fact, but also that he did so wilfully, corruptly and knowingly." (Citing authorities.) See also: 3 Wharton's Cr. Law, §1291, p. 650.

We recognize the general rule that it is not necessary in order to sustain a judgment on appeal for the evidence to show the defendant's guilt beyond a reasonable doubt, but all that is required is that there be some evidence of probative value sustaining every material allegation of the affidavit or indictment. *Arrington* v. *State* (1952), 230 Ind. 384, 386, 103 N. E. 2d 210.

However, appellant here relies upon an exception to the foregoing rule, which applies on a charge of perjury.[1] This exception is clearly stated by Judge Lairy, speaking for this court in *Hann* v. *State* (1916), 185 Ind. 56, at pages 60, 61, 113 N. E. 304, as follows:

"To warrant a conviction of perjury, the evidence must be such as to satisfy the jury to the

---

1. See: Wigmore on Evidence, 3d Ed., Vol. VII, §§2040-2042, pp. 273-282, for a history of the two witness rule.

exclusion of a rational doubt of the falsity ■ of the matter sworn to by the accused, but this evidence must be no less than the direct and positive testimony of two witnesses or one witness and corroborating facts and circumstances. The direct evidence contemplated is not limited to a denial in *ipsissimis verbis* of the testimony given by the defendant, but includes any positive testimony of a contrary state of facts to that sworn to by him at the former trial, or which is absolutely incompatible with his evidence, or physically inconsistent with the facts so testified to. This evidence must be of such a character as to exclude every other reasonable hypothesis except that of the defendant's guilt." See also: *Woodward* v. *State* (1926), 198 Ind. 70, 152 N. E. 277; *Galloway* v. *The State* (1868), 29 Ind. 442; *Hendricks* v. *The State* (1866), 26 Ind. 493; *Pierce and Another* v. *McConnell and Others* (1844), 7 Blackf. 170; *People* v. *Thomas* (1949), 90 Cal. App. 2d 491, 203 P. 2d 567; *Rader* v. *State* (1951), — Fla. —, 52 So. 2d 105, 108; *State* v. *Phillips* (1952), 172 Kan. 505, 241 P. 2d 503; *People* v. *Anderson* (1947), 117 Colo. 342, 187 P. 2d 934; *Lindsay* v. *People* (1949), 119 Colo. 438, 204 P. 2d 878; *Whitaker* v. *Commonwealth* (1950), 314 Ky. 303, 234 S. W. 2d 971; *Edison* v. *Commonwealth* (1953), — Ky. —, 257 S. W. 2d 588; *State* v. *Sailor* (1954), 240 N. C. 113, 81 S. E. 2d 191; *Blackstone* v. *State* (1949), 154 Tex. Cr. R. 62, 225 S. W. 2d 184; 70 C. J. S., Perjury, §68, p. 536.

There is no detailed rule prescribing the nature of the corroboration of the testimony of a single witness.[2] However, such corroboration may be furnished ■ by circumstantial evidence. *Harrison* v. *State* (1952), 231 Ind. 147, 167, 106 N. E. 2d 912, 32 A. L. R. 2d 875; *Galloway* v. *The State, supra* (1868), 29 Ind. 442.

The rule as stated in *Hann* v. *State, supra* (1916), 185 Ind. 56, 113 N. E. 304, applies only to the fact of

---

2. See: Wigmore on Evidence, 3d Ed., Vol. VII, §2042, p. 278.

false swearing and not to every detail or act surrounding the fact alleged as falsely sworn.

However, the evidence as a whole must be such as to satisfy the jury of the defendant's guilt beyond a reasonable doubt. *Galloway* v. *The State, supra* (1868), 29 Ind. 442, 450.

An examination of the evidence most favorable to the appellee discloses that appellant contracted with one Edward C. Payk and his wife, Stella Payk, to build a dwelling house for them in Hendricks County, Indiana.

On January 13, 1956, at a meeting in the offices of the Union Federal Savings & Loan Association for the purpose of completing arrangements for obtaining a construction loan on the property, appellant signed a contractor's affidavit in which he stated, under oath, that there were no unpaid bills for labor performed or material furnished, and that all such bills "have been paid to date," i.e., January 13, 1956, when in truth and in fact there was at that time a balance due the Timmons Lumber Company at Mooresville, Indiana, for materials delivered on January 3d, 4th, 5th and 6th, 1956.

Mr. Timmons testified, as a witness for the State, that he had sold materials to appellant herein for use in constructing the Payk dwelling, and that there was due and owing him "before the 13th, the balance shows $2,623.81"; that he received, on January 16, 1956, a payment in the amount of $1,739.95, for lumber and materials furnished prior to January 1st, 1956, leaving a balance due on January 13, 1956, of $883.86. This witness further testified that a statement (State's Exhibit 1) to which is attached copies of invoices, was delivered to appellant on January 1, 1956, covering materials delivered to January 1, 1956, and that no

statement for any materials delivered between January 1st and January 13, 1956, would be sent unless requested, until the first of the month following the date of delivery, because it was the practice of his company to bill the first of the month following delivery, and that the materials for this job were sold on "open account."

In reply to questions on cross-examination this witness further testified as follows:

"Q. Did you, Mr. Timmons, or did you not instruct any employee in your company to advise Mr. Pendleton or the Union Federal or Mr. Payk between the rendering of this statement and the date of January 13, 1956, that there was an additional amount due your company?

"A. No. There would be no reason to notify anyone. We do have the delivery slips, if there is not anyone there to sign for them. When the material is delivered we leave a delivery copy there. If it is lumber, why we raise up a board and lay it between something like that.

"Q. In other words, are you telling the court that it is possible between the first day of January 1956, and the 13th that you could have filled some orders, left material and posted it upon your books without the defendant or Mr. and Mrs. Payk knowing about it?

"A. We don't deliver anything without an order. Who ordered this, I couldn't say, whether it was Payks or whether it was the gentleman there, whether it was his contractor foreman, that I couldn't say."

Edward C. Payk, as a witness for the State, testified that neither he nor his wife ordered any of the building materials used on the house, but that sometime between January 1 and January 7 he and Mrs. Payk went to the Tanner Sheet Metal Works and selected the roofing material which was furnished by Timmons and deliv-

ered "to the premises sometime after that," and "they" started to put it on the house on January 5th, 1956, and it was completed by the 6th or 7th by appellant's workmen. This witness did not remember whether or not he had received a statement for the roofing between January 1 and January 13, but to his knowledge the bill for it had not been paid.

Stella Payk testified, on rebuttal for the State, that the property was appraised "on the 7th" and "the roofing was on the house" at that time, and it had been laid on January 5th and 6th and that the bill for the roofing had not been paid at the time of the trial.

Appellant testified, on cross-examination, that he was at the house under construction "from time to time" between January 1st and January 13th. He could not say whether or not Timmons Lumber Company made any delivery "on the job" during this period of time, but did say that to his knowledge nothing was ordered between the 1st and the 13th, and that to the best of his knowledge all of the bills to January 13, 1956 were paid.

Appellant further testified as follows:

"Q. You are also certain you did not order any between January first and the loan closure?

"A. I am rather certain of that, due to the fact that by basing my answer on this knowledge I have this constitutes rough framing lumber, and at the time of the loan closure the rough framing was under roof; and by that I say there was nothing ordered to my knowledge between the first and the 13th.

"Q. Now, did the Timmons Lumber Company or Mr. Timmons or anybody acting for the company submit you a bill or statement at any time for a balance of $883.86?

"A. No, sir."

To sustain the conviction herein it was necessary for the State to show that appellant not only swore falsely in fact but also that he did it wilfully, corruptly or knowingly. *Gardner* v. *State, supra* (1951), 229 Ind. 368, 376, 97 N. E. 2d 921.

Three different witnesses testified that the bill for the roofing had not been paid at the time appellant signed the affidavit on January 13, 1956. This ■ is sufficient to meet the requirements of the rule as to the proof of the false swearing.

We next consider the sufficiency of the evidence to support the charge that appellant made the affidavit wilfully, corruptly and falsely.

It seems to us that when all of the evidence is considered as a whole, it is sufficient to show circumstances from which the trial court could reasonably have inferred that when appellant received the statement dated January 1, 1956 (State's Exhibit 1) he would have known from an examination of the invoices accompanying the statement that no charge for roofing was included therein. There are other circumstances shown by the record sufficient to support the inference that appellant knew that the roofing was delivered and laid during the period from January 1 to January 7, 1956, or at least six days prior to the date on which the contractor's affidavit was signed, and that the bill for the roofing was unpaid on January 13, 1956.

The evidence pertinent on the question of knowingly, wilfully and corruptly swearing is subject to conflicting inferences, and where this is true we will not ■ weigh the evidence but will examine that most favorable to the appellee to determine whether there is any evidence of probative value to support the finding of the trial court. Such an examination as that

indicated by the summary of evidence hereinabove convinces us that there is sufficient evidence of probative value from which the judge could have found that the appellant was guilty as charged and, therefore, his finding will not be disturbed.

Appellant relies upon the case of *Gardner* v. *State, supra* (1951), 229 Ind. 368, 97 N. E. 2d 921, to support his position that the State has failed to prove that the affidavit made by appellant herein was made "wilfully and corruptly." In that case this court, at page 376 of 229 Ind., said:

> "If he [appellant] carelessly swore to a fact that if he had been more cautious he would have learned to be false, it is not perjury. His negligence ■ or carelessness in coming to a conclusion without taking pains to ascertain the truth of the facts to which he swears does not make his oath corrupt. Perjury cannot be wilful where the oath is according to the belief and conviction of the witness as to its truth."

However, we think the Gardner Case is clearly distinguishable from the case at bar because in that case there was no evidence from which even an inference might be drawn to show that appellant Gardner knew, or had any reason to know, that the affidavit which he made was false until some seven months and twenty-three days after the affidavit was made. It is true in the case at bar, that appellant testified that to the best of his knowledge all bills were paid at the time of the closing on January 13, 1956. However, as we have pointed out, there is considerable circumstantial evidence of probative value which refutes appellant's statement and from which the trial court had the right to draw an inference that appellant, contrary to his testimony, did know at the time he signed the affidavit

that no bill had been submitted for the roofing furnished by the Timmons Lumber Company between January 1 and 13, 1956, and that the debt owing the Timmons Lumber Company for such roofing was still unpaid.

The rule as stated in *Gardner* v. *State, supra,* is not applicable to the facts in the case at bar. Hence, this case lends no support to appellant's position here.

Since there was sufficient evidence to sustain the finding of the trial court it follows that the evidence was sufficient to take the case to the jury; hence, it was not error to overrule appellant's motion for discharge.

Appellant having failed to sustain his burden of showing reversible error, the judgment must be affirmed.

Judgment affirmed.

Landis, C. J., Achor and Arterburn, JJ., concur.

Jackson, J., dissents without opinion.

NOTE.—Reported in 156 N. E. 2d 782.