## VOGHT v. THE STATE.

[No. 17,840.    Filed May 7, 1896.]

CRIMINAL PROCEDURE.—*Assault and Battery with Intent to Kill.—Affidavit and Information.*—A charge of shooting and also of wounding, alleged to have been done unlawfully, feloniously, and purposely, and with premeditated malice, is sufficient to charge present ability on the part of the accused, to carry his felonious intent into effect.

CRIMINAL LAW.—*Assault and Battery with Intent.—Evidence.—Previous Good Character.—Mitigation of Punishment.*—In a prosecution for assault and battery with intent to kill, where the facts proved, clearly show an attempt to kill, evidence of previous good character will not avail to negative the intent, but may avail in mitigating the punishment.

TRIAL.—*Criminal Procedure.—Instruction to Jury.*—An instruction, that the jury "should not go beyond the evidence, or a want of evidence to hunt for doubts," is not objectionable, when construed with other instructions, that the jury "should not entertain such doubts as are merely chimerical, whimsical, or based on groundless conjecture."

APPELLATE PROCEDURE.—*Instructions to Jury too General, when not Ground for Reversal.*—The fact that instructions were too general, is not ground for reversal if more particular instructions were not requested.

INSTRUCTIONS TO JURY.—*Assault and Battery.—Intent.*—An intent to kill may be inferred, from an assault and battery with a deadly weapon used in such a manner as to be reasonably calculated to destroy life.

SAME.—*Self-defense.*—An instruction to the effect that the defendant might lawfully act upon his own belief of danger to himself, at the time of the shooting, is a sufficient statement of defendant's rights.

TRIAL.— *Challenge of Juror. — Harmless Error.* — Where a juror was challenged, for the reason that he had before the trial formed an opinion as to the merits of the case, and the objection was overruled by the court, and the juror peremptorily excused, and the appellant had not exhausted his peremptory challenges when the jury was made up, the error, if any, was harmless.

SAME.—*Oral Instructions.—Objections Waived.*—An agreement that certain papers and certain sections of the statutes might be read, and

certain other remarks made orally to the jury, as a part of the instructions, constitute a waiver of the requirement that the instructions must be in writing.

From the Huntington Circuit Court. *Affirmed.*

*Spencer & Branyan,* for appellant.

*W. A. Ketcham,* Attorney-General, *E. C. Kelsey,* and *Hart & Hart,* for State.

HOWARD, J.—The affidavit and information in this case charged: "That on the 7th day of June, A. D. 1895, Jacob Voght, at and in said county and State, aforesaid, did then and there unlawfully and feloniously commit a violent injury upon the person of Charles Christman, by then and there unlawfully, feloniously, and purposely, and with premeditated malice, shooting and wounding the said Charles Christman, with a pistol, then and there loaded with gunpowder and leaden ball, which the said Jacob Voght then and there had and held in his hands, with the intent then and there and thereby, him, the said Charles Christman, unlawfully, feloniously, purposely, and with premeditated malice, to kill and murder."

Complaint is first made that the court overruled appellant's motion to quash the affidavit and information. It is said that the information is not good as a charge of assault with intent, for the reason that it does not charge present ability. It is enough to say, in answer to this contention, that the information is not a charge of assault with intent, but of assault and battery with intent; the appellant is charged with "shooting and wounding." That was an assault and battery, and not a simple assault. " Shooting a person," as said in *Jarrell* v. *State,* 58 Ind. 293, "means that the person was hit by the substance with which the gun or pistol was loaded." In the case before us,

not only was "shooting" charged, but also "wound-ing;" and the shooting and wounding were alleged to have been done "unlawfully, feloniously, and pur-posely, and with premeditated malice." We are in-clined to think the battery was fully charged, al-though not in the precise words of the statute. It was substantially correct. Section 1806, R. S. 1894 (sec-tion 1737, R. S. 1881); *Sloan* v. *State*, 42 Ind. 570; *State* v. *Prather*, 54 Ind. 63; *Hays* v. *State*, 77 Ind. 450; *Knight* v. *State*, 84 Ind. 73; *Chandler* v. *State*, 141 Ind. 106.

The allegation was quite sufficient to charge present ability on the part of the appellant to carry his felo-nious intent into effect; namely, that he shot and wounded Christman with the intent to kill him. *Kunkle* v. *State*, 32 Ind. 220.

In *Littell* v. *State*, 133 Ind. 577, relied upon by ap-pellant, there is nothing in conflict with our conclu-sion in holding the affidavit and information in the case at bar sufficient. In that case the indictment was held by the court to be insufficient, by reason of its extreme obscurity and awkwardness of construc-tion. Here there is no uncertainty in the affidavit and information.

The only other alleged error discussed by counsel is the overruling of appellant's motion for a new trial.

There is but little conflict in the evidence; and, tak-ing that which sustains the verdict, it appears that on the evening of June 7, 1895, the "band boys" of the village of Bippus, in Huntington county, gave a social dance. Among those who attended were the appel-lant and his two brothers. The appellant carried a revolver, and all three carried "slung shots;" and all were engaged in various quarrels during the evening. The prosecuting witness, Christman, kept a saloon near the dance hall; and appellant and his brothers,

with several others, were, at different times, drinking in the saloon. Christman, having heard that one of the brothers, Emanuel, was under age, on one of the occasions, refused him beer. Emanuel, at this became angry and started behind the bar to get the beer himself, when Christman picked up his "billet," a hickory club about twelve inches long, and ordered him back. At this the appellant came forward, saying that whoever struck his brother "would take what he got," at the same time putting his hand to his hip. Emanuel had struck the bar with his "slung shot," or "billet," during the quarrel, and when appellant reached his hand to his hip, Christman thought he was also reaching for his "billet," or other weapon. On the closing of the saloon, a few minutes before 11 o'clock, appellant and his brother went out on the street and Christman went to the dance to act as door-keeper. Emanuel Voght had a quarrel, earlier in the evening, in the dance hall. Appellant claimed that on this occasion, and in the quarrels in the saloon, as well as in the several street brawls, he acted the part of peace-maker, and tried to make his brothers behave themselves. Christman saw the fighting in the street as he came from his saloon to the dance hall. When he took charge of the door, he locked it, opening it to those who asked to go in or out. A short time after Christman took charge of the door, appellant and his brother Emanuel, being chased by the street crowd, ran up the stairway to the hall. One of them, Emanuel, it would seem, finding the door closed, threw himself against it and burst in the upper panel. Immediately Christman opened the door and appellant walked in, in great anger, and turned towards Christman with raised hand, and, using a vile epithet, asked him if he had locked the door. Christman replied that he had, and pushed appellant off, and fol-

lowed him up with a stroke of his fist. Appellant then put his hand to his hip, as in the saloon, and Christman, noticing this, took his "billet" from his breast, where he carried it, and was about to use it on appellant, when appellant, who had partly fallen from Christman's second stroke, shot Christman through the breast.

Counsel for appellant contend that the evidence does not show a felonious intent. We are inclined to think that it does. Many facts, detailed in the voluminous record, tend to show that appellant and his brothers were bent on mischief during the whole evening, in the saloon, in the street, and in the dancing hall. Appellant, who lived nine miles distant, gave as a reason for taking his revolver along, that he intended to have "a time." His threat in the saloon and his assault upon Christman at the hall door indicated not only anger, but also malice; and his admissions to the sheriff after his arrest have the same indication. Counsel think that the evidence given of his previous good character, should negative any intent to do violence to the prosecuting witness. We confess that this evidence is not such as to impress us very forceably. His character witnesses were chiefly persons in whose employment appellant had been some years previous, and their knowledge was not of his general reputation, but rather of their own personal relations with him. But however strong this evidence might have been, it could not affect the positive testimony of appellant's misconduct on this occasion. Evidence of good reputation is all powerful, in case of uncertainty as to the force of evidence in relation to the crime charged, or where the evidence adduced to prove the charge is altogether circumstantial. In this case the facts and incidents in relation to the appellant's conduct were clearly established. The jury

Voght *v.* The State.

were of opinion that his acts showed an attempt to kill Christman, when he shot him; and his previous good character could not avail to change those acts, however much it might avail in mitigating his punishment. *Rollins* v. *State*, 62 Ind. 46; *Cavender* v. *State*, 126 Ind. 47.

In *Kunkle* v. *State*, already cited, it was said that, "If the assault and battery is perpetrated with a deadly weapon, used in such a manner as to be reasonably calculated to destroy life, the intent to kill may be inferred, as a fact, from the act itself, upon the principle that every man is presumed to intend the natural, necessary, and even probable consequences of an act which he intentionally performs." And in *Smith* v. *State*, 142 Ind. 288, it was held, that in the absence of exceptional circumstances a person is not justified in repelling a blow with the fist, by drawing a deadly weapon on his assailant.

Counsel complain because the sixth instruction given the jury contains the clause, "You should not go beyond the evidence or a want of evidence to hunt for doubts." We are of opinion that these words could not be understood by the jury in the sense suggested by counsel. The court evidently intended to inform the jury that a reasonable doubt might arise, either from the evidence given or from a lack of evidence; but, as said further on in the instruction, that the jury "should not entertain such doubts as are merely chimerical, whimsical, or based on groundless conjecture." In the instruction immediately preceding, the jury were told that, "The reasonable doubt which exists and entitles the accused to an acquittal, is a doubt of guilt reasonably arising from all the evidence in the case, or from a want of evidence." This

Voght *v.* The State.

was in harmony with *Densmore* v. *State*, 67 Ind. 306, cited by appellant.

Appellant next complains of instructions nine and eleven, on the law of self-defense; and instruction twelve, on the law of conspiracy. These are all general instructions, and as such are not, as we think, objectionable. There was evidence, both as to self-defense and as to conspiracy, to which the instructions were in some degree applicable; and if more particular instructions should have been given on those subjects, counsel should have offered them.

Instruction number two, asked by the State, was proper as charging the jury as to what acts would be sufficient, from which an intent to kill might be inferred. The information itself charged an assault and battery; namely, shooting and wounding, with an intent to kill; and the instruction charged, that if an assault and battery was perpetrated with a deadly weapon, used in such a manner as to be reasonably calculated to destroy life, the intent to kill might be inferred. This is strictly the law. *Kunkle* v. *State*, *supra; Newport* v. *State*, 140 Ind. 299. It was for the jury to determine whether such an assault and battery had been committed.

Neither do we see how the appellant could suffer harm from the fourth instruction, asked by the State. The jury could judge only from the evidence adduced, or from a failure of evidence; and if they were of opinion, from all the evidence in the case, that appellant was not in danger of bodily harm, at the time he shot Christman, and that he had no reason to believe himself in such danger, and did not, in fact, believe himself in such danger, then the law would imply that his act was done with an evil purpose. The instruction does not say that the appellant might not act upon appearances, as they presented themselves to

his mind at the time. On the contrary, the jury are plainly given to understand, that the appellant might lawfully act upon his own belief of danger to himself at the time of the shooting. The charge was, substantially, that if the appellant believed himself in great bodily danger, he might do what he thought reasonably necessary for his own defense.

Fault is found with other instructions given, but we think that none of the instructions given were seriously objectionable.

The juror, Ezra F. Williams, was objected to as incompetent, for the reason that he had, before the trial, formed an opinion as to the merits of the case, and which it would take some evidence to remove. Whether the objection should have been sustained, we need not determine; but as the juror was excused peremptorily, and as the appellant had not exhausted his peremptory challenges, when the jury was made up, we are of opinion that he did not suffer any harm from the ruling of the court. Section 1825, R. S. 1894 cl. 10 (section 1756, R. S. 1881, cl. 10); *Siberry* v. *State* 146 Ind. ——, 39 N. E. Rep. 936.

Error is charged in the giving of a part of the instructions orally, when a request had been made that all the instructions should be in writing. This would have been cause for reversal, *Littell* v. *State, supra; Sellers* v. *City of Greencastle*, 134 Ind. 645; but we are of opinion that in this case the agreement of the appellant, made in open court, that certain papers and certain sections of the statutes might be read, and certain other remarks might be made orally to the jury as a part of the instructions, cured the error here complained of. While, in case proper request is made, all the instructions should be made in writing, for the very good reason that all may go with equal authority to the jury; yet we do not think this is such a right as

might not be expressly waived by a defendant in open court. Neither was any exception taken, at the time, to the action of the court in giving a part of the instructions orally. *Bruce* v. *State*, 87 Ind. 450; *Colee* v. *State*, 75 Ind. 511.

In *Brown* v. *State*, 105 Ind. 385, the following comments, as made by Judge Mitchell, are quite applicable to the case at bar, with the sole exception that here the defendant is not charged with murder, but with an attempt to commit murder:

"A careful consideration of the evidence leaves no room for doubt in our minds, that, notwithstanding the court may have in some degree erred in the statement of merely abstract propositions of law, the jury were, taking the instructions as a whole, correctly charged in respect to the law applicable to the facts in the case. The conclusion was inevitable, upon any justifiable theory of the evidence, that the jury must have found the defendant guilty of murder in one or the other degree.

"The statute wisely provides in respect to appeals in criminal cases, that, 'In the consideration of the questions which are present, upon an appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action of the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant.' Section 1964, R. S. 1894 (section 1891, R. S. 1881).

"Considering all the instructions given, it appears that the jury were, in respect to all that was material to enable them to arrive at a correct result, properly instructed. However much we may regret the giving of instructions which are subject to criticism, we can not, in view of the statute, reverse the judgment for the errors which may have intervened, on account of

inaccuracies or merely abstract misstatements of law found in some of the instructions. *Epps* v. *State*, 102 Ind. 539."

In the case at bar, the foregoing observations may also be extended to actions and rulings of the court complained of, other than instructions given. The conclusion, however, was inevitable, upon any justifiable theory of the evidence. The jury must have found the defendant guilty; and the punishment, four years' imprisonment, was most merciful, indicating, without doubt, that the jury took account of all considerations urged in excuse of appellant's act.

Judgment affirmed.