## GARDNER *v.* STATE OF INDIANA.

[No. 28,699. Filed April 13, 1951. Rehearing denied May 16, 1951.]

*Floyd R. Murray;* and *Galvin, Galvin & Leeney,* both of Hammond, for appellant.

*J. Emmett McManamon,* Attorney General; *Frank E. Coughlin* and *Norman J. Beatty,* Deputy Attorneys General, for appellee.

*David P. Stanton,* Prosecutor of Lake County, and *Gilbert Gruenberg,* Special Deputy Prosecutor, *Amici Curiae.*

GILKISON, J.—On September 30, 1948, an indictment was filed against appellant in the Criminal Court of Lake County charging him with the crime of perjury in a voluntary affidavit, which, it is alleged, was sworn to before Walter Mybeck, Clerk of Lake Superior Court. The charge is brought under § 10-3802, Burns' 1942 Replacement. On June 2, 1949, appellant waived arraignment and entered a plea of not guilty.

On November 8, 1949, the state filed its motion to amend the indictment to make it state that the voluntary affidavit of appellant upon which the charge is based was sworn to before "Walter W. Krause who was then and there the duly appointed, authorized and acting deputy clerk of Walter Mybeck who was then and there Clerk of the Lake Superior Court of Indiana." Over appellant's objection, the court allowed this amendment to the indictment. Appellant's motion to strike out the amendment was overruled. These rulings are assigned as errors by appellant.

A motion to quash the amended indictment was overruled. This ruling is also assigned as error.

Trial by jury resulted in a finding of guilty and fixing appellant's age at thirty-five years. Appellant's mo-

tion for new trial containing 44 reasons was overruled and judgment was rendered on the verdict on April 21, 1950. From this judgment the appeal is taken.

A serious question is presented with respect to the order allowing the amendment of the indictment. A statute enacted in 1935 permits the amendment of indictments as follows:

"The court may at any time before, during or after the trial amend the indictment or affidavit in respect to any defect, imperfection or omission in form, provided no change is made in the name or identity of the defendant or defendants or of the crime sought to be charged." Sec. 9-1133, Burns' 1942 Replacement.

We are at once confronted with the question: Was the amendment, an amendment as to the form of the indictment only, or was it as to its substance? If it was as to form only, the ruling of the trial court allowing it was correct. But if the amendment was as to substance the ruling was error. There are certain essential averments fixed by statute that must be contained in any indictment or affidavit seeking to charge perjury in swearing to a written instrument. Among others, we call attention to the last sentence in Acts 1905, Ch. 169, p. 584, § 184, p. 623, as follows:

"And in an indictment or affidavit for perjury in swearing to any written instrument, it shall only be necessary to set forth that part of the instrument alleged to have been falsely sworn to, and to negative the same, *with the name of the officer or court before whom the instrument was sworn to.*" (Our italics.) Sec. 9-1116, Burns' 1942 Replacement.

This court has frequently held that the name of the person or court administering the oath is a matter of

substance and must be averred in the indictment or affidavit and proved as averred; a variance in this respect is fatal. *Davis* v. *State* (1923), 193 Ind. 650, 655, 141 N. E. 458; *State* v. *Gross* (1911), 175 Ind. 597, 600, 95 N. E. 117; *Hitesman* v. *State* (1874), 48 Ind. 473, 475; *Ewbank's Indiana Criminal Law* (2nd Ed.), Sec. 331, pp. 204, 205; Sec. 1171, pp. 890, 891; 41 Am. Jur., Perjury, Sec. 33, p. 20; 2 Wharton, *Criminal Procedure* (10th Ed., Kerr), Sec. 1086, pp. 1536, 1538; *Kerr* v. *The People* (1866), 42 Ill. 307. See also *Rhoades* v. *State* (1946), 224 Ind. 569, 572, 70 N. E. 2d 27; *Pagotis* v. *State* (1938), 214 Ind. 697, 699, 17 N. E. 2d 830; *Way* v. *State* (1946), 224 Ind. 280, 286, 66 N. E. 2d 608; *Drury* v. *State* (1945), 223 Ind. 140, 141, 59 N. E. 2d 116; *Edwards* v. *State* (1942), 220 Ind. 490, 44 N. E. 2d 304; 42 C. J. S., Indictments and Informations, Sec. 240, p. 1249; 27 Am. Jur., Indictments and Informations, Sec. 117, 118, p. 677, 678.

The *amicus curiae* recognizes this to be the established law in this state, but takes the position that the amendment statute (§ 9-1133, Burns' 1942 Replacement) authorizes amendments greater than for a mere "defect, imperfection or omission in form." In this connection the *amicus curiae* cites *Peats* v. *State* (1938), 213 Ind. 560, 567, 12 N. E. 2d 270. In that case the indictment as returned averred that the murdered man died on the 9th day of March. During the trial of the case the trial court allowed the indictment to be amended by changing the figure 9th to 10th. In considering the alleged error on appeal this court said: "Time is not of the essence of the offense, and the amendment did not alter the indictment in any material respect." It is contended that thereby this court enlarged upon the statute permitting amendments (§ 9-1133, *supra*), announced a doctrine permitting amendments so long as they are not of the

"essence of the offense." They also cite *Krauss* v. *State* (1947), 225 Ind. 195, 197, 73 N. E. 2d 676; *Marshall* v. *State* (1949), 227 Ind. 1, 9, 83 N. E. 2d 763, each of which use the same expression "essence of the offense." We do not think that in these cases or any others this court intended to enlarge or otherwise change the statute permitting amendments. Of course, this court cannot legislate nor can it extend its power by implication or intendment beyond the powers granted by the statute where the power exercised is statutory. 21 C. J. S., Courts, § 29, p. 40. True, it has used different words, but the intention was to permit amendments to indictments only "in respect to any defect, imperfection or omission in form." The proviso in the statute strongly supports this position for it says "provided no change is made in the name or identity of the defendant or defendants *or of the crime sought to be charged."* (Our italics.)

The original indictment as returned by the grand jury charged that the voluntary affidavit upon which the perjury charge is based was sworn to by appellant before "Walter R. Mybeck who was then and there clerk of the Lake Superior Court of Indiana . . ." As before stated the amendment allowed charged that the affidavit was sworn to by appellant before "Walter W. Krause, . . . who was an acting deputy clerk . . ." Under all the authorities in this state the amendment was one of substance and not of form. It was error to allow it.

The statute under which the indictment is returned, defining the offense and providing the penalty for "Perjury in Voluntary Affidavit" is as follows:

"Whoever wilfully, corruptly and falsely, before any officer authorized to administer oaths, under oath or affirmation, voluntary makes any false certificate, affidavit or statement of any nature, for

any purpose, shall be deemed guilty of perjury, and, on conviction, shall be imprisoned in the state prison for not less than one (1) nor more than ten (10) years." § 10-3802, Burns' 1942 Replacement.

It will be noted that an essential part of the crime charged is that the voluntary affidavit was "wilfully, corruptly and falsely" made. This means that there must be proof that at the time he made it, affiant knew the affidavit was false. By proper assignments in his motion for new trial appellant questions the sufficiency of the evidence to sustain the verdict; and avers that the verdict is contrary to law. By these specifications the sufficiency of the evidence is challenged in the trial court and in this court. *Luttrell* v. *State* (1932), 204 Ind. 116, 118, 183 N. E. 318; *Trainer* v. *State* (1926), 198 Ind. 502, 510, 154 N. E. 273; *Luther* v. *State* (1912), 177 Ind. 619, 622, 98 N. E. 640; by his reasons for new trial numbered from 18 to 44 inclusive appellant questions the rulings admitting in evidence documents executed by appellant eight months or more after the date of the commission of the alleged perjury, which documents indicate that at the time they were each executed appellant knew there was no such person in existence as John A. W. Hansingford, and to the admittance of each of which appellant at the trial made proper and timely objections.

Appellant insists that there is no evidence in the record, and no proper inference that may be drawn from the lawful evidence indicating that he had any knowledge of the falsity of the affidavit when he made it.

The evidence shows that appellant was a practicing attorney at law. As such he had represented plaintiffs who had sewage assessment liens on fifty-nine pieces of property in the Tapper Avenue Sewer Assessment Dis-

trict of Hammond. Such action had been taken that a judgment of foreclosure on the liens had been rendered on October 28, 1942. At a sale of the property thereon by the sheriff it was bid in by appellant for the judgment plaintiffs for the amount of the liens and a sheriff's certificate of sale was issued to the purchasers and delivered to appellant as their attorney on January 11, 1943. Appellant had the property described in the certificate of purchase appraised by William Duncan and Warren Reeder who appraised the same at $790.00 in January, 1944. Later Reeder informed appellant that he had a prospective purchaser for the sheriff's certificate—named John A. W. Hansingford whom appellant did not know. On January 28, 1944, appellant swore to, and on February 3, 1944, as attorney for plaintiffs he filed in the pending cause, his verified petition to sell the sheriff's certificate of sale to Hansingford for $798.35. This petition asked for the allowance of reasonable fees for the appraisers, the attorney, the payment of certain court costs and the distribution of the balance to the bondholders agreeable with their interests. Many months later it became known that there was no such person as John A. W. Hansingford. The indictment is based upon this falsehood in the verified petition to sell the sheriff's certificate of sale.

The evidence shows that Reeder provided the money to pay the purchase price for the sheriff's certificate and at his request it was assigned to Hansingford and delivered to Reeder. Reeder later took the sheriff's certificate of sale to the sheriff who executed a sheriff's deed to Hansingford on July 17, 1944, and gave or sent it to Reeder. About September 26, 1944, Reeder told appellant that he, Reeder, had purchased the sheriff's certificate in the name of John A. W. Hansingford and that he was Hansingford. So far as shown by the rec-

ord this was the first information appellant had as to the actual identity of Hansingford. He received this information some seven months and twenty-three days after he had made and presented the affidavit in court upon which the perjury cause was based.

Thereafter appellant took over the real estate described in the sheriff's certificate and the Hansingford sheriff's deed, paying Reeder therefor the sum of $1,000 on January 6, 1945, and he thereafter sold parcels of the land, signing Hansingford's name to sales contracts, deeds and other instruments, and he as notary public pretended to swear Hansingford to the instruments requiring verification and pretended to take his acknowledgments to the deeds and other instruments requiring acknowledgments. These later acts of appellant, over his objections, were admitted in evidence to prove that the affidavit upon which he is charged was made "wilfully and corruptly." Appellant admits that he later learned that the affidavit was false, but that these later acts of his are without value as proof that he knew it was false when he made it, and therefore these acts do not prove or tend to prove that he made the affidavit "wilfully, corruptly and falsely." Since this is the only proof, direct or inferential, that the affidavit was made wilfully, corruptly and falsely we are required to examine the matter carefully to ascertain whether this is proper and lawful evidence to show scienter or guilty knowledge by appellant at the time the affidavit was made.

In a prosecution for perjury in a voluntary affidavit it has long been the law in Indiana that the evidence must not only show the defendant swore falsely in fact, but also that he did so wilfully, corruptly and knowingly. If he carelessly swore to a fact that if he had been more cautious he would have learned to be false, it is not perjury. His negligence or care-

lessness in coming to a conclusion without taking pains to ascertain the truth of the facts to which he swears does not make his oath corrupt. Perjury cannot be wilful where the oath is according to the belief and conviction of the witness as to its truth. *Tull* v. *David* (1866), 27 Ind. 377, 379; *State* v. *Trook* (1909), 172 Ind. 558, 561, and cases there cited, 88 N. E. 930. See also *Fowler* v. *Wallace* (1891), 131 Ind. 347, 352, 31 N. E. 53; *Indianapolis Traction, etc., Co.* v. *Henby* (1912), 178 Ind. 239, 250, 254, 97 N. E. 313.

In the trial of a charge of knowingly receiving a stolen Ford automobile, brought under Sec. 10-3017, Burns' 1942 Replacement, the state proved that the defendant received seven other stolen Ford cars within a period of three months after the date of the offense charged. The relevancy of this evidence to prove defendant's knowledge of the theft at the time of receiving the Ford mentioned in the charge was questioned. This court held that evidence of the receipt of stolen property by defendant prior to the receipt of the stolen property charged would be competent evidence to show guilty knowledge. But subsequent receipts of stolen property would have no such relevancy. That if such evidence were allowed it would impel the human mind to a belief in the probability of guilt as proof of other crimes generally do, and this is the cogent reason why such evidence should be excluded. Subsequent knowledge should not be made retroactive. *Dampier* v. *State* (1921), 191 Ind. 334, 132 N. E. 590; *Wertheimer* v. *State* (1929), 201 Ind. 572, 586, 169 N. E. 40; *Beuchert* v. *State* (1905), 165 Ind 523, 527, 76 N. E. 111. See also Anno., 105 A. L. R. 1288, (b) *Subsequent Transactions,* pp. 1293, 1294; *McIntire* v. *State* (1857), 10 Ind. 26.

It was error to overrule the timely objections made to the introduction of the evidence of these several

subsequent acts and transactions by appellant. This error was necessarily prejudicial to appellant.

There is no evidence and no lawful inference in the record showing that appellant at the time he swore to the affidavit knew it was false. Therefore, there is no evidence that he made the affidavit wilfully and corruptly. The presumption of innocence protects a defendant until his guilt is alleged and proved.

In the view we take of the case as aforenoted, we think it is unnecessary to pass upon other alleged errors properly raised by appellant.

For the reasons given the judgment of the trial court is reversed, with instructions to sustain the motion for new trial, to overrule the motion of the state to amend the indictment, and for further proceedings agreeable with this opinion.

Emmert, J., concurs in result on the ground the evidence was insufficient to sustain the verdict.

Draper, J., not participating.

NOTE.—Reported in 97 N. E. 2d 921.