PONOS *v.* STATE OF INDIANA.

[No. 30,094. Filed July 10, 1962. Rehearing denied November 27, 1962.]

*John N. Stanton,* of East Chicago, for appellant.

*Edwin K. Steers,* Attorney General, and *Patrick D. Sullivan,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—*This is an appeal from a conviction of the crime of assault and battery with intent to commit voluntary manslaughter. The appellant states that the "sole proposition in this appeal is that the evidence in this cause, without conflict or

---

*This case was reassigned at a conference of this court on June 26, 1962, and the writer of this opinion received it for the first time on that date.

material facts, is not sufficient to establish appellant's guilt of the crime of which he was convicted beyond a reasonable doubt, but that it was necessary for the trial court to pile inference upon inference and presumption upon presumption. . . ."

The facts briefly are that the appellant, while attending a wedding party, became engaged in a dispute of minor proportions with another wedding guest; that the appellant left the premises following the dispute and went to his home where he picked up a deadly weapon, a shotgun, and he then drove back to the scene of the wedding party and from his moving car as he passed the front door, fired both barrels of the loaded shotgun at the house in which he knew persons to be, including the man with whom he had had the argument. At the moment the shots were fired, George Condes (not the person with whom he had quarreled) was leaving the party from the front door onto a well-lighted porch and was struck and wounded by the blasts from both barrels of the shotgun.

The evidence shows that there were two large fir trees about as high as the house on each side of the front walk, and it is claimed this prevented the appellant from seeing the front door and George Condes. This is a question of fact to be determined from testimony and from photographs introduced from which the judge might have drawn a contrary conclusion considering the speed of the car and other surrounding circumstances. Appellant admitted that he was resentful and that he fired the shots because he was angry and wanted to scare persons at the party. The appellant insists that he had no criminal intent sufficient to constitute that necessary in voluntary manslaughter. The controlling factor here is the existence of "sudden heat" as distin-

guished from premeditated malice, which is a necessary element in a murder conviction.

In *Walker* v. *State* (1856), 8 Ind. 290, 292, this court stated:

> "If from the battery committed by the defendant, death had ensued, the evidence in the record would, no doubt, be sufficient to have sustained a prosecution against him for the murder of *Anderson.* The intent to commit such felony would have been inferred from his act of shooting into the crowd; because every man is supposed to intend the necessary consequences of his own acts. But here, death has not ensued; still, however, the act of shooting produces the same evidence of an intent to murder, as though death had ensued. The defendant having committed a battery on *Anderson,* with a weapon likely to cause death, the jury were, in our opinion, fully authorized, in view of all the evidence, to find the intent as charged in the indictment. . . ." To the same effect see: *Kunkle* v. *The State* (1869), 32 Ind. 220; *Petillo* v. *State* (1950), 228 Ind. 97, 89 N. E. 2d 623; *Voght* v. *The State* (1896), 145 Ind. 12, 43 N. E. 1049.

This court will not examine the record to determine whether or not the evidence sustains defendant's construction of the evidence in favor of his innocence. It will only consider whether or not the evidence is sufficient for the jury or court to form a basis for its finding of guilty. The citation of *Thacker* v. *Commonwealth* (1922), 134 Va. 767, 114 S. E. 504 to the effect that "the law does not presume, because an assault was made with a weapon likely to produce death, that it was an assault with the intent to murder" is not the law as established in Indiana. In this case the evidence is uncontradicted that the appellant was angry and resentful; that he used a deadly weapon and that he fired it at a point where one might reasonably anticipate persons to

be gathered. The court had the right logically and reasonably to draw the inference that he intended the probable consequences of his act to injure someone and that it was done in "sudden heat." *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35.

The appellant finally contends that the court, in making its finding and sentence, took into consideration the pre-commitment investigation and report. Although the record shows that the report was filed prior to the finding by the court that the defendant was guilty and prior to sentence, the record does not show that the appellant made any objection thereto, but stood by silently. Error cannot be claimed on appeal if no objection is made thereto at the proper time in the trial court and no specification with respect thereto is made in the motion for a new trial. 8 I. L. E., Criminal Law, §373, p. 424.

The judgment of the trial court is affirmed.

Landis and Achor, JJ., concur.

Jackson, J., dissents with opinion in which Bobbitt, J., concurs.

### DISSENTING OPINION

JACKSON, J.—I dissent from the majority opinion herein.

On December 9, 1960, this cause was submitted to the court for trial, all evidence was heard, and the cause was continued for finding and judgment until December 16, 1960, (pending the submission and consideration of the report of the pre-commitment investigation).

On December 16, 1960, the court made and entered its finding and judgment, which in pertinent part reads as follows:

"... [A]nd comes also Hon. Max Goldsmith, Special Judge, in open court, and the report of the pre-commitment investigation is now submitted and considered by the Court, and the Court now finds that the defendant is guilty as charged; that he is twenty years of age; that he be sentenced to be committed to the custody of the Board of Trustees of the Indiana Reformatory to be confined by them according to law for a period of not less than two nor more than fourteen years from this date, and that he pay the costs of this prosecution.

"It is therefore considered, adjudged and decreed by the Court that the defendant, James T. Ponos, for the offense by him committed, to-wit: Assault and Battery With Intent to Kill, be and he is hereby committed to the custody of the Board of Trustees of the Indiana Reformatory to be confined by them according to law for a period of not less than two nor more than fourteen years from this date, ...."

The factual situation in this cause, disclosed by the evidence was as follows:

On Sunday, June 12, 1960, Aphrodite Karras was married to Steve Stavros at the St. Demetrios Greek Orthodox Church in Hammond, Indiana; after the church services, an afternoon and evening reception for the relatives and friends of the bridal couple was held at St. Michael's Ukrainian Hall on Columbia Avenue in Hammond, which lasted until about midnight; after the general reception at the hall another reception was held for more intimate and specially invited friends of the bridal pair at the home of the bride's mother, Mrs. Catherine Karras, at 7104 Jackson Street, in Hammond, which began around midnight and continued for some time thereafter; there were about thirty-five or forty people at the reception in the Karras home, divided generally with the older people upstairs in the living quarters on the

first floor and the younger people in the basement or recreation room where there was music, dancing and some refereshments of different kinds of beverages.

Amongst other people at this latter party were a Mr. and Mrs. George Condes, Leo F. Sarivales and his 14 year old daughter, Irene, and the appellant, James T. Ponos, at that time 19 years of age. Appellant Ponos and his mother and father had been among the invited guests at the church wedding and had been invited to the reception at the hall, but only Ponos himself went to the hall reception, at which place he was invited by Mrs. Karras, the bride's mother, to come to the house reception later, which he did. During the course of the day appellant had had about half a dozen "highballs" at the reception at St. Michael's Ukrainian Hall, and some "either beer or highballs" later at the Karras home. Appellant Ponos was not previously acquainted with Mr. and Mrs. Condes, nor with Mr. Sarivales or his daughter, Irene.

About 1:15 or 1:30 a.m. at the party in the Karras home in the basement recreation room Mr. Sarivales was talking to his daughter, who was sitting down, when the appellant came up, took the daughter's hand, and suggested dancing; the daughter rose in response, but Mr. Sarivales announced that he was talking to his daughter and there would be no dancing at that time; appellant argued "let her decide for herself," but the father ordered the daughter to sit down, which she did. The father had taken hold of appellant by his shoulder to talk to him, but appellant shook him off and left the Karras house and went to his home.

At some time between 2:00 and 2:30 in the morning the guests, George Condes and his wife, Mary Condes, decided to leave the party and go home; as they were coming out the front door of the Karras house, onto the stoop, and while the screen door was still in the act of swinging shut again, the Condes heard an "explosion" and both Mr. and Mrs. Condes were hit by multiple shotgun pellets. They did not see who did the shooting, nor did anyone else.

The Hammond police got to the home of the appellant about half an hour after the shooting; during questioning he first denied, then admitted, that he had done the shooting; that as he was driving past the Karras house he pulled the trigger discharging both barrels at one time; that he had no intention of hurting anyone, that he had fired at the house, not at any people; that he felt the world was mad at him and disliked him and he wanted to take it out on something and shot at the house without any intention of hurting any person.

Appellant's testimony at the trial, not contradicted by any fact, circumstance or other testimony, was to the effect that he had gone home from the reception resentful toward Mr. Sarivales; he did not intend to go home after his shotgun; when he got into his house he decided to get it; his home was about three miles from the Karras home; he drove his car back towards the Karras home and approached it from the South heading North on Jackson Avenue; that as he neared the Karras house he stuck the gun out the window, with the barrel resting on the car door and the butt held in front of him; that there were two big fir trees or evergreens about as high as the house, one on either side of the front door walk, which prevent anyone from seeing the front door and front stoop from

the street while approaching the house from the south or north; that as he approached the house he could not see the front door, or front stoop, or any persons present on the front stoop because of the intervening trees; that the narrow street with cars of the guests parked on both sides, had a narrow driving lane left, and that due to this fact, together with the fact that he was nearing the intersection of Jackson Avenue and 171st Street (the Karras house being on the corner) the attention of his eyes was required for his driving, and that at the time he pulled the trigger he was not looking at the Karras house, but straight ahead toward the intersection, and did not see anyone present at the front door of the house; he did not at any time stop, or aim the gun at anything or any person; he did not know as he went by the intersection corner that he had hit anybody; he did not know he had hit or hurt anyone until he was in the Hammond Police Station.

That appellant fired the shot which injured George Condes is undisputed. The only disputed fact or factor is that of appellant's intent at the time of the act. Appellant admitted that "I was resentful toward him" (Leo Sarivales) because "I didn't feel he should put his hands on me after asking me not to dance with his daughter."

In the case at bar the question for determination is the sufficiency of the evidence to sustain the conviction. The charge on which the defendant was tried is one in which intent is an essential element, the burden is on the State to prove that intent beyond a reasonable doubt, as well as all the other elements of the charge. One of the peculiar facts of this case is that the only evidence connecting the appellant with the shooting is his own admission. It is undis-

puted and uncontradicted that the only unpleasantness prior to discharge of the shot was that appellant had been denied the privilege of dancing with the daughter of Mr. Sarivales. He had no disagreement, trouble or unpleasantness with anyone else, was unacquainted with the people who were injured and so far as the record discloses only "wanted to scare some body" because he was mad on account of what Mr. Sarivales said to him at the dance. The record, including the photographs of the scene introduced in evidence, discloses that at that time of night or morning it would be hard to see, whether or not there was anyone at the door let alone determine their identity.

The State argues that it is well established that the matter of intent as an essential element of a crime is a question for the sole determination of the trier of the facts, citing as authority. *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35; *Voght* v. *State* (1896), 145 Ind. 12, 43 N. E. 1049; *Kunkle* v. *State* (1869), 32 Ind. 220.

The State further argues that appellant's intent to commit voluntary manslaughter was properly inferable from his act of voluntarily discharging the shotgun at the house in which he knew persons to be, and in support cites as authority, *Walker* v. *State* (1856), 8 Ind. 290; *Petillo* v. *State* (1950), 228 Ind. 97, 89 N. E. 2d 623; *White* v. *State* (1934), 169 Miss. 332, 338, 153 So. 387, 388; which last case holds "[o]ne who shoots recklessly into a crowd in utter disregard of human life is presumed to intend to kill all or any of the crowd. . . ."

The State further contends that it is equally well established that this Court will not weigh evidence,

citing *Martin* v. *State* (1957), 236 Ind. 504, 141 N. E. 2d 455.

We agree in general with the authorities and the propositions advanced by the State, in the abstract they constitute the unquestioned law of the State as determinative of the fact situation in each of the cited cases. In the case at bar we apply the principles stated with the fact situation in the instant case.

By such application, without weighing evidence, we must conclude that at the time appellant left the Karras home he was out of humor, or mad, but had made no threats nor given any indication that he had any unlawful intentions. He drove to his home, picked up his shotgun and returned to the street in front of the Karras house, without aiming the gun or stopping the car, and without seeing anyone inside or outside of the house, he pointed it at the Karras house and discharged both barrels, injuring Mr. Condes, who, at the time was leaving the front door of the house.

The State insists that the mere use of the firearm is sufficient to infer the intent to commit the felony, relying on the authority of *Walker* v. *State* (1856), 8 Ind. 290, 292, 293, which held:

"... If from the battery committed by the defendant, death had ensued, the evidence in the record would, no doubt, be sufficient to have sustained a prosecution against him for the murder of *Anderson*. The intent to commit such felony would have been inferred from his act of shooting into the crowd; because every man is supposed to intend the necessary consequences of his own acts. But here death has not ensued; still, however, the act of shooting produces the same evidence of an intent to murder, as though death had ensued. The defendant having committed a battery on *Anderson*, with a weapon likely to cause death, the jury were, in our opinion, fully

authorized, in view of all the evidence, to find the intent as charged in the indictment. . . ."

The features that distinguish the case at bar from the *Walker* case, *supra*, are that there the shot was fired into a *crowd;* here at a *house;* there *in view of all the evidence,* the jury, it was held, were fully authorized to find the intent as charged in the indictment. The same principle holds true in the case of *Kunkle* v. *State* (1869), 32 Ind. 220.

It is apparent that in the various cases cited in which this Court affirmed judgments of convictions of assault and battery with intent to kill, this Court looked to the facts and circumstances surrounding and attending the use of the deadly weapon and was unwilling to affirm a conviction of a felony solely upon an inference or presumption, that use of a deadly weapon in such fashion that it might kill someone sustains, without regard for what the true intent was, a finding of intent to kill as a matter of law.

Mr. Bishop, in his Criminal Law, Vol. 1, (8th Ed.) at §729, says:

"When the law makes an act, whether more or less evil in itself, punishable, though done simply from general malevolence, if one takes what, were all accomplished, would be a step towards it, yet if he does not mean to do the whole, no court can justly hold him answerable for more than he does. And when the thing done does not constitute a substantive crime, there is no ground for treating it as an attempt. So that necessarily an act prompted by general malevolence, or by a specific design to do something else, is not an attempt to commit a crime not intended. . . . When we say that a man attempted to do a given wrong we mean that he intended to do, specifically, it; and proceeded a certain way in the doing. The intent in the mind covers the things in full; the act covers it only in part. Thus, to

commit murder, one need not intend to take life, but to be guilty of an attempt to murder, he must so intend. It is not sufficient that his act, had it proved fatal, would have been murder...."

The application of the foregoing principle to the facts in the case at bar shows clearly, we think, that the judgment complained of is erroneous. While it might possibly be said that the firing of the shotgun at the Karras house was an act done towards the commission of the act charged, the evidence falls short of proving that it was fired with the intent to murder Mr. Condes.

Appellant points out in his brief that the record here further shows that at the conclusion of hearing the evidence and after the argument of counsel the trial court did not then make any finding in the cause, but made the following entry, providing in part, "[a]nd the Court, having heard the evidence and arguments of counsel and being now fully advised in the premises, now continues said cause pending the submission and consideration of the report of the pre-commitment investigation and for finding and judgment to December 16, 1960."

On December 16, 1960, the trial court made its finding and judgment as follows:

"Comes now the State of Indiana by its Prosecuting Attorney and comes also the defendant in in his own proper person and by counsel [naming them] and comes also Hon. Max Goldsmith, Special Judge, in open court, *and the report of the pre-commitment investigation is now submitted and considered by the Court, and the Court now finds that the defendant is guilty as charged....*" [Emphasis supplied.]

Thus, in addition to the infirmities of the erroneous judgment heretofore pointed out in this dissent, we

now find the court has compounded error by taking into consideration said report prior to the rendition of its finding after the close of all the evidence, after the conclusion of the trial without giving appellant an opportunity to confront or cross-examine the person or persons preparing the alleged *pre-commitment report* or the person or persons furnishing the information embodied in such report. Certainly such report is at best hearsay evidence, inadmissible for any purpose, and consideration of such report in determining the guilt or innocence of the appellant, constitutes a deprivation of constitutional rights, due process and is reversible error.

Guilty, appellant may be, of some offense, but the record here wholly fails to sustain the conviction appealed from.

The judgment of the trial court should be reversed and the cause remanded with instructions to sustain appellant's motion for a new trial.

Bobbitt, J., concurs.

NOTE.—Reported in 184 N. E. 2d 10.