EMERY *v*. STATE OF INDIANA.

[No. 31, 076. Filed April 25, 1968. Rehearing denied June 10, 1968.]

*Robert W. Maher,* and *Ben F. Hatfield, Jr.,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Lawrence D. Frutkin* and *Donald D. Doxsee,* Deputies Attorney General, for appellee.

ARTERBURN, J.—The State indicted appellant with a charge of murder in the first degree in the killing of one William Earl Holland. Trial was had by jury, and the jury returned a verdict of guilty of murder in the second degree. He appeals and claims error by reason of the overruling of his motion for a new trial, with the specifications that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. The only substantial question appellant raises is the contention that the killing was not done purposely and maliciously. For that reason we must review the evidence briefly. When an appellant in a criminal action raises the question of the sufficiency of the evidence, this Court will only consider that evidence most favorable to the State, together with all reasonable and logical inferences to be drawn

therefrom. *Greenwalt* v. *State* (1965), 246 Ind. 608, 209 N. E. 2d 254. *Ponos* v. *State* (1962), 243 Ind. 411, 184 N. E. 2d 10.

It appears that the appellant-Emery, the decedent-Holland, Waymond Dyer and another man by the name of Decker left a tavern about 12:00 o'clock midnight and went to the home occupied by the appellant and Holland. They played some poker and apparently drank some beer, and while thus engaged Holland noticed that the appellant-Emery had a semi-automatic-rifle in his hands. Holland, the decedent, took the rifle from Emery and said: "You know it's loaded" and put the rifle in a closet. Approximately ten minutes later Emery went to the closet, picked up the gun and was squatting in the closet with the rifle pointed towards Dyer. Dyer jumped out of the chair, and Emery shot him in the right hip. Then the decedent-Holland got up unarmed, with nothing in his hands and rushed Dyer and was shot three times. Holland grabbed for Emery and had his hands around him as they fell back in the closet. Decker finally grabbed the rifle from Emery after he had shot Holland three times. The time of the shooting was approximately thirty minutes after the four men had arrived at the apartment.

It is first argued that the appellant was not capable of forming an intent due to intoxication. Although the evidence is in some conflict, there is sufficient evidence for the jury to find that the appellant was not intoxicated to the degree urged. There was evidence that the appellant was sober at the time he arrived at the apartment before the shooting; that he walked straight and talked normally. After the police arrived following the shooting, the testimony at that time was that his manner and talk did not reveal any intoxication.

It is next urged that there is no evidence of malice and purpose to kill, primarily because there is no antecedent evidence of any altercation or quarrel between the parties. The appellant relies upon *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633. An examination of that case shows there is a distinction between that and the instant appeal. This Court there

found that the evidence showed that the appellant did not intend to kill because of the uncontradicted evidence that his shot was directed at the hand of the decedent, who held a knife. It is stated there (at p. 688 of 242 Ind. and at p. 637 of 181 N. E. 2d):

> "The present case is distinguished from *Taylor* v. *State* (1929), 201 Ind. 241, 167 N. E. 133, in that there the victim, Cook, was shot in the 'breast above his heart', . . ."

and quoted there from *Taylor* v. *State:*

> "Appellant's act of shooting Cook in a vital part of . . . Cook's body with so powerful a pistol that the shot passed through Cook's body shows a deliberate intent to bring about the probable consequences of the act. And the presumption of malice stands until rebutted by competent evidence."

The *Miller* case also stated (at p. 687 of 242 Ind. and at p. 637 of 181 N. E. 2d):

> "It is true that the deadly weapon was intentionally used here, but in our judgment it was not used in such a manner as was calculated to, or was likely to cause death."

In the case before us the evidence is uncontradicted that the appellant first shot Dyer, who was unarmed, and then turned the gun on the decedent, who was also unarmed, and continued to shoot, placing three shots into the body of Holland, one of them penetrating a vital portion of the body, namely, the breast, and the main artery leading to the heart.

In *Schlegel* v. *State* (1958), 238 Ind. 374, 377, 150 N. E. 2d 563, 564, we stated:

> ". . . intent and purpose to kill may be inferred from the deliberate use of a deadly weapon in a manner calculated to produce death and malice may be inferred from the use of the shotgun which caused the death as charged in the indictment herein. *Pitts* v. *State* (1939), 216 Ind. 168, 170, 171, 23 N. E. 2d 673; *Myles* v. *State* (1955), 234 Ind. 129, 133, 124 N. E. 2d 205."

In *Bridgewater* v. *State* (1899), 153 Ind. 560, 563, 55 N. E. 737, 738, we stated:

". . . suddenness and ferocity, the weapon used, the number and character of the wounds, and their location, unmistakably indicated a relentless purpose to kill, coupled with intense malice. . . ."

Malice is one fact for the jury to decide in the prosecution for second degree murder, and the law presumes that a person intends the natural consequences of his act. The ██ appellant's use of a deadly weapon which he knew was loaded and which had previously been taken away from him with a warning, is a fact which the jury had a right to consider. It has been said a number of times that the use of a deadly weapon against an unarmed person substantiates the essential elements of malice. *Sparks* v. *State* (1964), 245 Ind. 245, 195 N. E. 2d 469.

The judgment of the trial court is affirmed.

Lewis, C. J., and Hunter, J., concur. Mote, J., dissents. Jackson, J., dissents with opinion.

### DISSENTING

JACKSON, J.—Appellant was charged by indictment with the crime of murder in the first degree. The indictment, omitting formal parts thereof, reads as follows, to-wit:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that EDWARD H. EMERY on or about the 1st day of JANUARY, A.D. 1966, at and in the County of Marion, and in the State of Indiana, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder WILLIAM EARL HOLLAND, a human being, by then and there unlawfully, feloniously, purposely and with premeditated malice shooting at and against the body of the said WILLIAM EARL HOLLAND with a gun, loaded with gunpowder and metal bullets, then and there held in the hands of the said EDWARD H. EMERY, and did then and there and thereby inflict mortal wounds in and upon the body of the said WILLIAM EARL HOLLAND, of which mortal wounds the said WILLIAM EARL HOLLAND did then and there and

thereby die; and so the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said EDWARD H. EMERY in the manner and form and by the means aforesaid unlawfully, feloniously, purposely and with premeditated malice did kill the said WILLIAM EARL HOLLAND, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Upon arraignment the appellant entered a plea of not guilty to the charge embraced in the indictment.

Trial was had by jury, beginning August 1, 1966 and concluding August 3, 1966. At the conclusion of the State's evidence, and out of the presence of the jury, the appellant made an oral motion for a discharge as to First and Second Degree Murder. The motion was overruled by the court, whereupon appellant submitted evidence and rested. The State of Indiana rested.

The jury retired, deliberated, reached and returned the following verdict:

"We, the Jury, find the defendant, Edward H. Emery guilty of Murder in the Second Degree as charged in the indictment."

Thereafter, a pre-commitment investigation report was ordered filed, and afterwards on August 30, 1966, the same was filed. Thereafter, on September 1, 1966, appellant by counsel filed his motion for a new trial.

On September 15, 1966, the court rendered judgment on the verdict of the jury. Such judgment in pertinent part reading as follows, to-wit:

"This being the day and hour heretofore set for pronouncement of judgment after presentence investigation heretofore ordered, filed and examined by the Court.

On a finding of guilty of Second Degree Murder as covered by the Indictment by a Jury, Court now sentences the Defendant being of true age forty-six (46) years to the Indiana State Prison for the term of his natural life.

IT IS THEREFORE ORDERED, ADJUDGED AND DE-CREED by the Court that the Defendant Emery be of true age forty-six (46) years and being found guilty of Second Degree Murder as covered by the indictment by a jury is now sentenced to the Indiana State Prison for the term of his natural life."

Thereafter on September 19, 1966, the court made the following entry:

"Court being duly advised now overrules Defendant's motion for a new trial, heretofore filed."

Appellant's motion for a new trial contains the following two grounds, to-wit:

"1.   The verdict of the jury is not sustained by sufficient evidence.
2.   The verdict of the jury is contrary to law."

Appellant's Assignment of Error contains a single specification as follows:

"1.   The Court Erred in overruling the appellant's motion for a new trial."

There is little or no conflict in the evidence in the case at bar and the summary of the evidence embodied in the appellee's brief, together with a few additions from the evidence of the witness Dyer and the witness Decker both of whom were present when the shooting occurred, clearly presents the picture.

First before getting into the evidence as adduced from the witness stand it is clearly apparent that it is uncontraverted that the decedent Holland came to his death as a result of having been shot by three bullets from the 22 semi-automatic rifle held in the hand of the appellant Emery. The appellant, by counsel, in oral argument, admits the shooting, the only question being as to whether or not the appellant is guilty of first or second degree murder or some other lesser charge.

It appears that on the night of December 31, 1965, the appellant and William Holland went to the home of Waymond Dyer, arriving there about 11:00 o'clock at night. They invited Dyer and his wife to accompany them to the Sherman Bar. At the time of their arrival Mrs. Dyer had retired and her husband was reading a book. The appellant and Mr. Holland stayed there probably thirty minutes seeking to persuade the Dyers to accompany them to the Bar, and finally Mr. Dyer decided that he would go. While Dyer was getting dressed, Emery and Holland went over to the Mahogany Bar and got a pint of whiskey. On their return they all had a drink and then went to the Sherman Bar. The appellant, the decedent and Dyer spent the balance of the evening in the Bar drinking, dancing and visiting with friends until the same closed at about 2:00 o'clock on the morning of January 1, 1966. At that time the Bar closed and shortly thereafter the three gentlemen and one Herbert William Decker, who was a bartender at the Sherman Bar, decided to go to the apartment occupied by the decedent and the appellant.

Upon arrival at the apartment, Decker carried up a fifth of whiskey, Holland carried up a case of beer and Emery carried up a case of beer. They set the beer by the refrigerator and Holland started putting some in the ice box so it would get cold. According to the evidence of all the parties who testified in this case, none of the witnesses were drunk at the time they arrived at the apartment, although it appears that from and after their arrival at the Sherman Bar about midnight until the Bar closed about 2:00 a.m. shortly before they left for the apartment, all of the parties had been drinking regularly, some drinking beer and some whiskey. After the parties entered the apartment three of them sat down at the table, Holland opened each of them a beer. The appellant sat on the couch, and there was some discussion about playing some kind of poker with dollar bills. All of them with the exception of the appellant took a dollar bill out of their pockets and were examining them. Emery, who had been sitting on the

couch with a bottle of beer, went into the front room and picked up the rifle. He came back with it in his hands. The deceased walked over to him and took it and said, "You don't need that rifle, you know its loaded." The appellant without any argument and without any comment permitted the decedent to take the rifle and place it in the closet. The appellant sat back down on the couch with the bottle of beer in his hand, and then set it on the floor between his legs and was not noticed again until he spoke to Dyer when he, appellant, was in the closet either squatting or sitting on the floor. The other parties went ahead with the discussion of the poker game that had not yet started when the appellant called Dyer by his first name "Wayne." Dyer looked at the appellant and saw he was in the closet with the rifle in his hands pointed at him and jumped on the chair. At that time the appellant shot him in the hip with the .22 rifle. Thereupon the decedent, Holland, got up, unarmed and with nothing in his hands, rushed to the closet where the appellant was sitting or squatting with the rifle in his hands, reached for the rifle and was shot three times as he had his hands on the appellant, and the two of them fell back into the closet. At this point Decker, who was sitting by Holland and who was with Holland, ran towards the appellant after he had fired the shot at Dyer, grabbed the rifle from Emery, jerked the magazine out of it and threw it behind the couch and threw the rifle on the cot. The shooting took place approximately thirty minutes after Emery, Dyer, Decker and Holland arrived at the apartment occupied by Emery and Holland. After the shooting Decker ran to get help. The police arrived at the apartment shortly after the shooting and after investigation placed Emery under arrest.

The Police testified that at the time they arrived the appellant was under the body of the deceased Holland in the closet and that after Holland was removed from the closet the appellant continued to lie there, either in a drunken stupor or unconscious, and that it was only after they had taken care of the injuries sustained by Dyer and made arrangements to

remove Mr. Holland's body that they paid any attention to the appellant. One of the Police Officers testified that he brought the appellant to, by placing his two thumbs in the bridge of his nose to see if he was actually unconscious or not and if he would respond or not, and that appellant did respond by starting to sit up and his eyes were blinking then but he would not make any comment. His eyes were glossy and he just stared straight out. In the opinion of the officer he had been unconscious. The appellant was placed under arrest and escorted downstairs, and out to the patrol wagon and sent to jail. The evidence of the officer was that he walked along between the officers, didn't struggle, walked straight and went straight to the wagon under his own power. He had no opinion as to whether or not the appellant was drunk.

In so far as the record is concerned there is a total absence of any evidence as to any ill feeling, quarreling, harsh words, arguments or indication of hard feeling at any time on the part of any of the parties who were at the apartment.

The statute defining murder in the second degree and prescribing punishment thereof is found at § 10-3404 Burns' (1956 Repl.) and in pertinent part reads as follows:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life."

The appellant and the appellee are in agreement that the essential elements of second degree murder are: (a) the killing of a human being; (b) that it was done purposely, and (c) that it was done maliciously.

There is substantial evidence in the record to the effect that the appellant killed a human being, namely the decedent Holland. The appellant admits that Holland died as a result of the gun shot wound he suffered. There is no conflict on this point. Thus (a), the first of the essential elements of

second degree murder, is present. That leaves for determination the other two elements, (b) that it was done purposely and (c) that it was done maliciously.

It is the appellant's contention that the verdict is contrary to law because the evidence was insufficient to show that the shooting was done purposely and maliciously.

The State contends that this Court in *Schlegel* v. *State* (1958), 238 Ind. 374, 377, 150 N. E. 2d 563 said:

> " ' . . . intent and purpose to kill may be inferred from the deliberate use of a deadly weapon in a manner calculated to produce death' and malice may be inferred from the use of the shotgun which caused the death as charged in the indictment herein. *Pitts* v. *State* (1939), 216 Ind. 168, 170, 171, 23 N. E. 2d 673; *Myles* v. *State* (1955), 234 Ind. 129, 133, 124 N. E. 2d 205."

The State also contends:

> "Malice is shown by the use of a deadly weapon. *Barker* v. *State* (1958), 238 Ind. 271, 150 N. E. 2d 680. It has been said a number of times that the use of a deadly weapon against an unarmed person substantiates the essential elements of malice. *Yarber* v. *State* (1962), 242 Ind. 616, 179 N. E. 2d 882; *Dobbs* v. *State* (1957), 237 Ind. 119, 143 N. E. 2d 99; *Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108."

This Court has held:

> "It is only when there is an absence of substantial evidence on an essential element of an alleged crime, or *when the evidence is without conflict and leads to but one reasonable conclusion* and the verdict of the jury reached a contrary conclusion, that the verdict will be disturbed as not being supported by sufficient evidence or as being contrary to law." (Emphasis supplied.) *Greenwalt* v. *State* (1965), 246 Ind. 608, 615, 209 N. E. 2d 254, 257.

We have also held:

> ". . . before there can be a conviction, there must be some substantial evidence of probative value to induce a belief of a defendant's guilt beyond a reasonable doubt in

the minds of the court or jury trying the case." *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809, 811.

In oral argument, counsel for the appellant has stated that in order for this conviction to be sustained, this Court must indulge in two legal fictions, (1) that malice must be inferred in the use of a deadly weapon, and (2) that purpose must be inferred from the use of a deadly weapon.

In criminal cases this Court has held times without number that for a valid conviction to be obtained it is incumbent upon the State to prove the defendant's guilt beyond a reasonable doubt. The Court has further said that a defendant enters upon the trial of the cause with a presumption of innocence and that that presumption follows the defendant throughout the trial and until guilt is proven beyond a reasonable doubt. *Riggs* v. *State* (1958), 237 Ind. 629, 147 N. E. 2d 579; *Gardner* v. *State* (1951), 229 Ind. 368, 97 N. E. 2d 921.

I agree with the position taken by appellant's counsel, that in view of the state of the record before us, in order to affirm this conviction we would have to indulge in the two legal fictions, (1) that the malice must be inferred from the use of a deadly weapon, and (2) that the purpose must be inferred from the use of a deadly weapon. It strikes the writer of this opinion that such inferences are in direct conflict with the presumption of innocence which clothes the defendant throughout the trial, and further that it is never permissible in a criminal case, to build an inference upon an inference in order to sustain a conviction. *Titzer* v. *State* (1930), 201 Ind. 643, 171 N. E. 7; *Smith* v. *State* (1928), 200 Ind. 411, 164 N. E. 268.

In the case at bar the appellant was in a place he had a right to be, in the apartment in which he and the decedent lived. There is no evidence of intent on the part of the appellant to shoot the deceased, on the contrary it appears that at all times during the entire evening all the persons present were on extremely pleasant terms. From the record it appears more logical to assume that the gun discharged accidentally

when the roommate, Holland, grabbed the rifle and attempted to wrest it away from appellant than to indulge in the fiction that because Holland died as a result of the gunshot wounds this Court must infer that malice and purpose to kill the decedent existed in the mind of the appellant simply because he had possession of the rifle, a deadly weapon.

Finally, I am of the opinion that the legal presumption of innocence which clothes the defendant in a criminal case, is not removed and guilt proven beyond a reasonable doubt, by indulgence in an inference which is nothing more than a legal fiction devised to enable a conviction to be sustained when there is no direct proof of guilt. Appellant may be guilty of manslaughter but not of murder in the second degree.

I am of the opinion verdict of the jury in this case was not sustained by sufficient evidence and is therefore contrary to law by reason of the fact that there is no evidence in the record of sufficient probative value to sustain the same, that there is a total lack of evidence as to malice and purpose, two of the three essentials required in order to sustain the verdict herein.

The judgment of the trial court should be reversed and the cause remanded with instructions to grant appellant's motion for a new trial.

Mote, J., concurs.

NOTE.—Reported in 236 N. E. 2d 28.